Kelly & Brother *v.* Kauffman Milling Company.

: 92　105'
| 96　38'

92　105
118　137

1. An objection that a document offered in evidence was not admissible, because the execution of the same was not proved as required by law, being overruled, the presumption is that the execution was duly proved, unless the contrary affirmatively appears either by an authentic statement that there was no evidence of execution, or by setting out such evidence on that subject as was adduced to the presiding judge. Mere preliminary evidence on such a question is not for insertion in the brief of evidence requisite to support a motion for a new trial. Consequently its absence from the brief does not warrant the conclusion that the overruled objection should have been sustained.

2. It being manifest from the facts of the case, considered all together, that there was a genuine bill of lading which had been surrendered up to the carrier, and that the pressure of the litigation was not upon its existence or contents but upon the legal consequences of indorsing and turning the same over to a third person, it is no cause for a new trial that the court may have erroneously admitted secondary evidence of the contents of that document without the omission to discover and produce the original having been legally and fully accounted for.

3. When a contract for the sale of goods has been made through a broker, the goods consigned by the seller to the purchaser and the bill of lading sent by mail directly to the latter, the broker, under his general powers as such, has no authority to rescind the contract of sale, receive from the purchaser the bill of lading indorsed by him and thus obtain possession of the goods from the carrier, or cause their delivery to a stranger to whom he transfers the bill of lading. The purchaser, in an action by the seller against him for the price, cannot avoid payment by reason of these facts, and no local custom or usage recognizing and upholding such dealings between purchaser and broker will affect the seller unless the custom or usage be at least known to him, so that his assent thereto could reasonably be inferred.

4. The evidence warranted the verdict, and there was error in denying a new trial.

May 22, 1893.

Complaint on account. Before Judge WESTMORELAND. City court of Atlanta. September term, 1892.

BIGBY, REED & BERRY and HUTCHESON & KEY, for plaintiffs in error. GLENN & SLATON, *contra.*

BLECKLEY, Chief Justice.

1. The bill of lading offered and received in evidence was a duplicate, and so purported to be on its face. The motion for a new trial complains that its execution was not proved as required by law. We cannot tell whether it was or not, for it is not stated that there was no evidence tending to prove it, nor is any evidence on the subject set out. Its absence from the brief of evidence is of no significance, because the office of the brief is only to show such evidence as was submitted to the jury, and the jury have no concern with preliminary evidence adduced to the court as a basis for introducing a document to be read as evidence in the case. Here there is no authentic statement that there was no evidence of execution, and any evidence which there may have been is not brought up. There is nothing to guide us, therefore, but the presumption of law that the court, before admitting the duplicate bill of lading, became satisfied by proper means that it was a genuine document duly executed.

2. From the duplicate and the other facts in evidence it is manifest that there was a genuine original bill of lading covering the consignment involved in this case, and that this original indorsed by the consignees, Kelly & Bro., was turned over to Boozer, the broker, and by him to Morris, Ewing & Co., to whom he sold the carload of flour, and that they surrendered it to the railway company upon receiving the flour. The pressure of the

litigation was not upon the existence or contents of the bill of lading, but upon the legal consequences of indorsing it and turning it over to the broker, thereby enabling him to dispose of the consignment and appropriate the proceeds to his own use to the prejudice of the Kauffman Milling Company, the consignor, the plaintiff in this action. Grant, therefore, that it was error for the court to admit secondary evidence of the contents of the document without the omission to discover and produce the original having been fully and legally accounted for, this is no cause for a new trial. The evidence, as well that in behalf of the defendants as that in behalf of the plaintiff, could have no proper subject-matter without the assumption or concession that there was in fact a shipment of the flour and a genuine bill of lading therefor, with contents such as appear in the duplicate bill introduced in evidence. It would be child's play rather than serious judicial work to send the case back for another trial in order that this original bill might either be produced or its non-production more satisfactorily accounted for.

3. The contract of sale from the milling company to Kelly & Bro. was negotiated through Boozer, a broker in Atlanta. The flour was consigned from a point in the State of Illinois to Kelly & Bro. at Atlanta, Ga., and the railroad receipt, or bill of lading, was sent by mail by the former to the latter. This action is brought for the price, and the defence is that Kelly & Bro. did not receive the flour, but that the broker took charge of it and sold it. To this defence it is replied that the broker had no authority so to do, and could not have assumed and exercised such authority to the injury of the milling company without the co-operation of Kelly & Bro., who indorsed the bill of lading which had been sent to them, and turned it over to the broker. We think the broker, being a mere middleman to negotiate

the sale, and having no express authority to do more, could not rescind the contract or receive the flour and bind the milling company by his conduct. It was sought to enlarge his authority under the general law by local custom or usage prevailing in Atlanta, under which brokers were recognized as representing the persons who had employed them to sell, in afterwards cancelling the sales and taking charge of the goods. But the evidence fails to show any knowledge of this local custom or usage by the milling company or any dealing by it with reference thereto. There is no ground for inferring its assent to such a custom.

4. The evidence was sufficient, and there was no error in denying a new trial.        *Judgment affirmed.*