Bass *vs.* Winfry.

[1.] Objections to mere irregularities, should be presented at the earliest practicable moment.

Complaint, in Floyd Superior Court. Tried before Judge TRIPPE, February Term, 1856.

Nathan Bass sued John B. Winfry as surviving co-partner of the late firm of Price & Winfry, (which firm was composed of defendant and William T. Price,) on an open account, for $37 76.

The defendant pleaded a set-off, alleging that plaintiff was indebted to the late firm of Price & Winfry, in the sum of one hundred dollars and twenty-two cents, the amount paid to the Tax Collector of Floyd County, by Price, for the said plaintiff, and at his request.

On the trial, CHARLES H. SMITH, sworn: John B. Winfry admitted that the account sued on was correct, and that he had no objection to it.

### EVIDENCE FOR DEFENDANT.

PITMAN LUMPKIN, sworn : William T. Price, in December, 1852, or January, 1853, paid witness $100 22 on a tax receipt, as follows :

" Received of N. Bass One Hundred $\frac{22}{100}$ Dollars, his tax for 1852.  PIT. LUMPKIN, T. C."

REUBEN J. MULKEY : Price & Winfry bought the saw-mills in the neighborhood of Bass' plantation in co-partnership, which they carried on in co-partnership.

D. S. PRINTUP, sworn: Brought suits on two notes for said Bass against Price & Winfry ; obtained final judgment on the same. Bass informed witness that said notes were given for said mills; that he (Bass) thought said amount of $100 22 paid by Price for him, had been credited on one of said notes.

By some means, the papers in the two suits testified about by Printup, went to the Jury, both the writs and notes; on the notes there were credits, but none corresponding with the amount of the tax receipt. The Judge states, in the bill of exceptions, that a portion of the papers in the two cases had been read to the Jury, and he supposed, at the time, all of them had been given in evidence.

The Court charged the Jury, " That if they believed, from the evidence, that the defendant had proved his plea of set-off, he would be entitled to recover the difference, and that they must return their verdict for the defendant for the difference of his demand, over and above the demand of the plaintiff."

To which charge Counsel for plaintiff excepted. The Jury found a verdict for the defendant for $62 42.

Whereupon, Counsel for plaintiff moved the Court for a new trial, on the following grounds :

1st. Because the Jury found contrary to the law and against the weight of the evidence.

2d. Because the Court erred in refusing to rule out the testimony of Pitman Lumpkin, on the ground of irrelevancy.

3d. Because the Court erred in permitting and directing the original writs and notes in a former suit to go out with the Jury, the same not having been read in evidence.

4th. Because the Court erred in giving the charge it did, there being no evidence to support it.

The Court refused the motion, and Counsel for plaintiff excepted.

PRINTUP, for plaintiff in error.

UNDERWOOD & SMITH, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

[1.] The question for the Jury was, whether the payment made by Price to the Tax Col. for Bass, and pleaded as a set-off, was a payment made by Price as a member of the firm of Price & Winfry, or as not a member of that firm.

On this question Pitman Lumpkin's testimony was *not* "irrelevant." It showed a *payment* to have been made by *Price.* It was merely silent as to the character in which Price acted in making the payment.

It seems that Bass had sold to Price & Winfry a saw-mill, and had taken from them, in payment, their two promissory notes; and that afterwards, he had obtained judgment against them on the notes; and that he thought that he had given credit for the hundred dollars paid the Tax Collector for him by Price on one of the notes, and that the defendants, in order to show that he had not so given credit, introduced in evidence the notes and the judgment; and that it is certain that the defendants read the notes to the Jury, and not certain but that they also read the judgment to the Jury, and

that "the writ and notes, the Court recollected having been offered in evidence, and some of them at least having been read to the Jury; and, as the Court supposed, all the papers were read as far as required by plaintiff's Counsel," the Court sent out all the papers with the Jury.

And the complaint is, that the "writ" was not *read* to the Jury; and yet, that the Court let it go out with the Jury.

Now from what has been stated, it appears that it is not certain but that the writ *was* read to the Jury, or but that if it was not read to the Jury, the reason was, that the reading of it to the Jury was *waived* by the plaintiff.

Again: It is to be presumed that the parties to a case have notice of all the acts of the Court done in the course of the trial of the case. It is to be presumed, therefore, that the plaintiff in error had notice of the sending out of the writ with the Jury. Why, then, did he not make known to the Court his objection to its being so sent out?

[1.] It is a general rule, that objections to acts of mere "irregularity," should be urged at the earliest practicable moment. And, at most, the sending out of this writ with the Jury, was a mere irregularity.

We think the objection came too late.

Upon the whole, we over-rule this exception, viz: that the Court let the writ go out with the Jury.

We think that there was plenty of evidence to authorize the charge of the Court, and a plenty to justify the verdict of the Jury.